IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEFFREY REIMER, an individual,<br><br>      Plaintiff,<br><br>  vs.<br><br>KUKI'O GOLF AND BEACH CLUB, INC., a Hawaii corporation; MELANIE AIONA, an individual; DOES 1-10; and ROE CORPORATIONS 1-10,<br><br>      Defendants. | CIVIL 12-00408 LEK-BMK |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Jeffrey Reimer's ("Reimer") Motion for Summary Judgment ("Motion"), filed on November 5, 2012.  [Dkt. no. 19.]  Defendants Kuki'o Golf and Beach Club, Inc. ("the Club"), and Melanie Aiona (collectively, "Defendants") filed a memorandum in opposition to the motion ("Opposition") on January 14, 2013 [dkt. no. 35], and Reimer filed his reply on January 18, 2013.  [Dkt. no. 36].

The Motion came on for hearing on January 5, 2013. Appearing on behalf of Plaintiff were Lyle S. Hosoda, Esq., and Raina P.B. Gushiken, Esq., and appearing on behalf of Defendants was Leighton K. Oshima, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the Court HEREBY GRANTS IN PART AND DENIES IN PART the

Motion for the reasons set forth below.

I.  **Background**

Reimer filed his Complaint in the instant case on July 19, 2012.  In the Complaint, Reimer alleges that he and his wife are members at the Kuki'o Golf and Beach Club on the island of Hawai`i.  A number of years ago, Reimer suffered a severe closed head injury and, as a result, suffers from Traumatic Brain Injury ("TBI").  Because of Reimer's TBI, he "is prone to make off-hand comments."  [Compl. at ¶¶ 7, 9-11]

On January 13, 2012, Reimer made such a comment when engaging in a conversation with his therapist, Ms. Hoyle, at the Club.  Defendant Aiona overheard the comment and complained to the Club's management that Reimer had "verbally assaulted her. . ., even though Reimer never talked to, or engaged in a conversation with [her.]"  [Id. at ¶ 29.]  Reimer alleges that Defendant Aiona has "unreasonable and unjustified sensitivities to statements she overhears from Club members and guests" as a result of her previous involvement in a 2010 employment discrimination arbitration (the "Van Calcar Arbitration").  [Id. at ¶ 31.]

Reimer alleges that, as a result of Aiona's complaint to management, Mike Meldman sent a January 15, 2012 letter on behalf of the Club stating that Aiona had suffered from "severe distress," and informing Reimer that his Club membership was

"suspended effective immediately." [Id. at ¶ 32.] On January 23, 2012, Reimer responded to the Club's letter with an apology and a clarification that his remarks were not directed toward Aiona, and that in any even they were the result of his TBI. In his response, he stated that his suspension was a violation of the Club's Bylaws, and requested a formal hearing under the Club's governing documents. [Id. at ¶ 33.] Reimer states that the Club's Bylaws require that a Club member "enjoy all privileges of the Club to which the member is entitled prior to such complaint during the pendency of an investigation." [Id. at ¶ 34 (quoting Motion, Exh. 1 (Bylaws, Article XVII) at 16).]

        The Club responded by letter on February 2, 2012, "demand[ing] Reimer submit himself to demeaning supervision while on the Club's premises because of his disability" and requesting that he again apologize to Aiona. The letter did not reinstate Reimer's membership privileges or set a date for a hearing regarding his suspension. Reimer alleges that "while Reimer was suspended, Kuki'o Corp employees made defamatory and false comments concerning Reimer, and his family as a result of the alleged incident." [Id. at ¶¶ 36-39.]

        The Complaint asserts the following claims: violation of the Americans with Disabilities Act ("ADA") (Count I); breach of contract (Count II); breach of the covenant of good faith and fair dealing (Count III); defamation (Count IV); intentional

3

misrepresentation (Count V); negligent misrepresentation (Count VI); negligent hiring and retention (Count VII); negligent supervision (Count VIII); negligence (Count IX); and declaratory relief (Count X).

**II.  Motion**

In the instant Motion, Reimer seeks an order from this Court rejecting the Defendants' affirmative defense that alternative dispute resolution is required under the Club's Bylaws, and stating that none of his claims are required to be mediated or arbitrated pursuant to the Club's Bylaws.

Article XXI of the Club's Bylaws states, in part:

> Each and every dispute, claim or other matter of disagreement concerning the rights, obligations or remedies of the Club, its officers, directors, affiliates and any Club Member or applicant for membership relating to or arising out of the Membership Plan, Bylaws or the Rules and Regulations or any transaction contemplated by the Membership Plan, Bylaws or the Rules and Regulations, but not involving a discipline matter or non-payment or a personal injury claim against the Company or the Club, shall only be decided by mediation, and if necessary, arbitration.

[Mem. in Supp. of Motion at 2; Motion, Exh. 1 (Bylaws) at 19-20.]

Reimer argues that dispute resolution is not mandated for the claims in the Complaint because Reimer's claims do not arise out of the Club's governing documents and/or they involve a disciplinary matter.  [Mem. in Supp. of Motion at 4.]  Reimer emphasizes that all of his claims arise out of him "being discriminated against by Kuki'o for his disability and his

subsequently being disciplined for the manifestation of his disability." [Id. at 5.]

Reimer therefore requests that the Court grant his Motion as to Defendants' affirmative defense that dispute resolution is required in this case.

### A.  **Defendants' Memorandum in Opposition**

In their Opposition, Defendants argue that the claims in Reimer's Complaint are based upon non-disciplinary matters and, as such, the dispute resolution provision applies. Specifically, Defendants argue that Reimer alleges violations of federal law, torts committed by Club employees, and a failure by the Club to exercise reasonable care in hiring, retaining, and supervising its employees.  To the extent any of these allegations rely upon the Club's liability for the actions of its employees (i.e., Count IV (defamation), Count V (intentional misrepresentation), Count VI (negligent misrepresentation), Count VII (negligent hiring and retention), Count VIII (negligent supervision), and Count IX (negligence)), these claims do not relate to disciplinary matters and are thus subject to mandatory dispute resolution.  [Mem. in Opp. at 3-7.]

Defendants emphasize that federal policy favors arbitration.  They argue that the dispute resolution provision in the Bylaws is ambiguous as to whether the instant dispute should be mediated and/or arbitrated and, as such, the ambiguity should

be resolved in favor of dispute resolution.  [Id. at 10.]

    **C.**    **Reply**

In his Reply, Reimer argues that the dispute resolution provision in the Bylaws is not ambiguous, and clearly sets forth the instances in which alternative dispute resolution is required.  [Reply at 3-4.]  Reimer goes on to reiterate that the allegations in the Complaint clearly involve a disciplinary matter.  As such, Reimer argues that dispute resolution is not required under the Bylaws.  [Id. at 4.]  Riemer thus urges the Court to grant the Motion and rule that none of his claims fall under the dispute resolution clause.

## DISCUSSION

Reimer argues that, according to the plain language of the Club Bylaws, the claims in his Complaint do not fall under the mandatory dispute resolution clause.  Hawai`i has adopted the Uniform Arbitration Act,[1] codified in Haw. Rev. Stat. Chapter 658A.  Under this Act, an agreement to arbitrate a controversy existing or arising between the parties is "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."  H.R.S. § 658A-6(a); see also Metzler Contracting Co. v. Stephens, No. CV 07-00261 HG-

---

[1] The instant dispute is governed by Haw. Rev. Stat. Ch. 658A, as opposed to the Federal Arbitration Act, because the contract at issue does not involve a maritime transaction or a transaction in interstate commerce.  See 9 U.S.C. § 2.

6

LEK, 2007 WL 1977732, at *3 (D. Hawai`i July 3, 2007) (acknowledging Hawaii's "strong public policy in favor of arbitration").

"Although the public policy underlying Hawai`i law strongly favors arbitration over litigation, the mere existence of an arbitration agreement does not mean that the parties must submit to an arbitrator disputes which are outside the scope of the arbitration agreement." Haw. Med. Ass'n v. Haw. Medical Service Ass'n, Inc., 133 Hawai`i 77, 92, 148 P.3d 1179, 1194 (2006) (internal quotations omitted). Whether an issue falls within the scope of an agreement to arbitrate "depends on the wording of the contractual agreement to arbitrate." Id. (citing Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc., 78 Hawai`i 107, 113, 890 P.2d 694, 700 (Ct. App. 1995), superseded by statute as stated in, Ueoka v. Szymanski, 107 Hawai`i 386, 114 P.3d 892 (2005)). A court should interpret the agreement terms according to their plain, ordinary meaning and accepted use in common speech. See State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315, 324, 978 P.2d 753, 762 (1999).

The Court therefore looks to the language of the Bylaws to determine whether Plaintiff's claims fall within the dispute resolution provision. Article XXI of the Club's Bylaws states, in part:
> Each and every dispute, claim or other matter of disagreement concerning the rights, obligations or remedies of the Club, its officers, directors,

> affiliates and any Club Member or applicant for
> membership relating to or arising out of the
> Membership Plan, Bylaws or the Rules and
> Regulations or any transaction contemplated by the
> Membership Plan, Bylaws or the Rules and
> Regulations, but not involving a disciplinary
> matter or non-payment or a personal injury claim
> against the Company or the Club, shall only be
> decided by mediation, and if necessary,
> arbitration.  The dispute resolution procedures
> described herein shall be the sole remedy
> available to the parties involved; provided,
> however, that the Club shall have the right to
> collect, through a court proceeding, any Club
> account or other amount owing as a result of loss
> or destruction of the Club's property or injury
> caused to any party by a Club Member.

[Mem. in Supp. of Motion at 2; Motion, Exh. 1 (Bylaws) at 19-20.] Reimer argues that all of the claims in the Complaint fall under the exception from mandatory dispute resolution for a "disciplinary matter."  The Court addresses each of Reimer's claims, in turn.

## I.  Count I: Violation of the ADA

Reimer's first claim is for a violation of the ADA. Specifically, Reimer alleges that he suffers from an impairment (namely, TBI), and that the Club has discriminated against him because of that impairment by failing to make accommodations allowing him equal enjoyment of the Club facilities, and denying him equal participation in the Club's services and facilities. [Compl. at ¶¶ 41-49.]

The underlying conduct that gives rise to Reimer's ADA claim is the Club's suspension of his membership in response to

Defendant Aiona's complaint about his off-hand remark.  As such, Count I of Reimer's Complaint clearly arises from a disciplinary matter.  Article XVII of the Club Bylaws, titled "Discipline," sets forth the "Grounds for Discipline" under the Bylaws.  Among these are listed "unsatisfactory behavior," "failure to abide by the rules and regulations [of the Club,]" "treatment of the personnel or employees of the Club or the Company in an unacceptable manner," and "verbal abuse of the Members, governors, directors or officers of the Club."  [Mem. in Supp. of Motion at 2; Motion, Exh. 1 (Bylaws) at 15-16.]  The grounds for the Club's suspension of Reimer – his making an allegedly offensive remark to Aiona, a Club employee – would seem to fall within one or more of these enumerated "Grounds for Discipline."  Further, the "Discipline" section of the Bylaws expressly lists suspension as a potential disciplinary action under the Bylaws.  [Id. at 16.]  Thus, while there is no evidence before the Court at this time that the Club complied with the disciplinary procedure set forth in Article XVII of the Bylaws, it is clear that the Club's actions in suspending Reimer for his off-hand comment fall within the definition of the term "disciplinary matter" as that term is used in the Bylaws.

        The Court therefore finds that Count I of Reimer's Complaint falls within the "disciplinary matters" exception of the dispute resolution provision in the Bylaws.  As such, the

Court GRANTS Reimer's Motion as to Count I of the Complaint, and finds that Article XXI of the Bylaws does not mandate dispute resolution for Count I.

## II. Count II: Breach of Contract

Count II of the Complaint is a breach of contract claim against the Club. Reimer alleges that the Club "breached its Governing Documents by, among other things, suspending Reimer after the alleged incident, not providing Reimer with a hearing when requested, [and] not allowing Reimer access to Club facilities while it was investigating the alleged incident . . ." [Compl. at ¶¶ 54-59.]

As was true of Count I, the conduct underlying Count II of the Complaint involves the disciplinary actions taken against Reimer for his off-hand remark. In addition, Count II also rests upon Reimer's allegations that the Club failed to afford him the procedural protections set forth in Article XVII of the Bylaws, namely, that the Club failed to provide him with a formal hearing regarding his suspension, and failed to allow him use of the Club while the complaint against him was being investigated. [Compl. ¶¶ 33-35, 38.] Because, as discussed above, these actions fall squarely within the disciplinary matters contemplated in Article XVII of the Bylaws, the Court FINDS that Count II of Reimer's Complaint similarly meets the exception for "disciplinary matters" in the dispute resolution provision of the Bylaws. As

such, the Court GRANTS Reimer's Motion as to Count II and FINDS that Count II is not subject to mandatory dispute resolution under Article XXI of the Club Bylaws.

### III. Count III: Breach of Fair Dealing

In Count III, Reimer alleges that the Club breached the implied covenant of good faith and fair dealing by failing to perform its contractual obligations in a manner that was "[]faithful to the purpose fo the contract."  [Compl. at ¶¶ 62-67.]  This claim, similar to those in Count II, is based upon the underlying actions taken by the Club that were disciplinary in nature, namely, Reimer's suspension from the Club after Aiona's complaint about his off-hand comment, and the Club's failure to provide Reimer with a formal hearing and other procedural protections as contemplated in Article XVII of the Bylaws.  As discussed above, the Club's suspension of Reimer because of Aiona's complaint against him was clearly disciplinary in nature, as that term is defined in the Bylaws themselves.  As such, the Court FINDS that Count III falls within the "disciplinary matter" exception to the dispute resolution provision of the Bylaws.  The Court therefore GRANTS Reimer's Motion with respect to Count III, and FINDS that Count III is not subject to mandatory dispute resolution under Article XXI of the Club Bylaws.

### IV. Count IV: Defamation

Reimer's fourth claim alleges that Aiona and other Club

employees made "false and defamatory statements concerning Reimer." [Compl. at ¶¶ 39, 68-73.] This allegation, unlike those in Counts I through III, does not arise from the disciplinary actions taken by the Club against Reimer. Rather, the allegations underlying Count IV deal with defamatory statements allegedly made by Defendant Aiona and other Club employees after Reimer had been suspended. Any disparaging statements Defendant Aiona or other Club employees may have made regarding Reimer are entirely separate from the Club's disciplinary process and actions in suspending Reimer's membership because of the complaint about his off-hand comment. The Court therefore FINDS that Reimer's defamation claim does not fall within the "disciplinary matter" exception to the general mandatory dispute resolution provision in the Bylaws. Likewise, Count IV does not involve "non-payment or a personal injury claim" against the Club, the only other exceptions to the otherwise broad mandatory dispute resolution provision in Article XXI of the Bylaws. [Mem. in Supp. of Motion at 2; Motion, Exh. 1 (Bylaws) at 19-20.]

As such, the Court FINDS that the claim in Count IV of Reimer's Complaint does not fall within any of the exceptions to the Bylaws mandatory dispute resolution provision. The Court thus DENIES Reimer's Motion as to Count IV and FINDS that the claims in Count IV are subject to mandatory dispute resolution

under Article XXI of the Club Bylaws.

## V. Counts V and VI: Intentional and Negligent Misrepresentation

Counts V and VI are claims for intentional and negligent misrepresentation, respectively. It appears from the Complaint that these claims, like Count IV, relate to the allegedly defamatory statements about Reimer made by Aiona and other Club employees after Reimer had been suspended. [Compl. at ¶¶ 74-87.] As such, and as discussed above, these claims do not arise out of the disciplinary action taken against Reimer. The Court thus DENIES Reimer's Motion as to Counts V and VI and FINDS that the claims in Counts V and VI are subject to mandatory dispute resolution under Article XXI of the Club Bylaws.

## VI. Counts VII and VIII: Negligent Hiring and Retention and Supervision

Count VII of the Complaint alleges that the Club was negligent in hiring and retaining Aiona to serve as the Club's spa manager. Reimer further claims that the Club failed to exercise reasonable care in selecting, hiring, and retaining Aiona as an employee generally, and that the Club knew or should reasonably have known that Aiona would "act tortiously by, among other things, inappropriately carrying out her employment position as well as targeting guests for unwarranted discipline." [Compl. at ¶¶ 89-92.] Count VIII of the Complaint alleges that the Club was negligent in supervising Defendant Aiona, that the Club knew or should have known that she would act tortiously,

13

that it had the authority to keep her from doing so, and that it failed to exercise due care by intervening and regulating her conduct. [Compl. at ¶¶ 95-101.]

Reimer's allegations in these two counts deal with the Club's conduct in hiring and supervising its employees, specifically, the Club's hiring and retention of Defendant Aiona. They do not arise out of the Club's decision to discipline Reimer by suspending his membership, or the Club's alleged conduct in failing to provide Reimer with procedural protections before doing so. As such, the Court FINDS that Reimer's claims in Counts VII and VIII of the Complaint do not involve a disciplinary matter such that an exception to the general mandatory dispute resolution provision is applicable. The Court therefore DENIES Reimer's Motion as to Counts VII and VIII of the Complaint and FINDS that these claims are subject to mandatory dispute resolution under Article XII of the Club Bylaws.

**VII. Count IX: Negligence**

Reimer's ninth claim is for negligence. Reimer claims that the Club and Aiona owed a duty of care to all Club members and guests, and that Aiona failed to meet her duty of care with respect to Reimer "because of her acts and omissions surrounding the alleged incident on January 13, 2012." [Compl. at ¶¶ 104-105.] Reimer further alleges that the Club failed to meet its duty of care with respect to Reimer because of its handling of

Aiona's complaint against him, its suspension of Reimer's membership, and its handling of the Van Calcar Arbitration settlement.  [Compl. at ¶¶ 106.]

The portion of Reimer's negligence claim relating to Defendant Aiona's actions appears to be based upon Reimer's allegations that Aiona made defamatory statements about Reimer after his suspension.  As such, and as discussed above, this portion of Count IX is not disciplinary in nature and does not arise out of the disciplinary actions taken by the Club against Reimer.  The Court thus FINDS that the portion of Count IX based upon Defendant Aiona's negligence does not fall under the "disciplinary matter" exception to the general dispute resolution provision and, thus, is subject to mandatory dispute resolution under Article XXI of the Club's Bylaws.

Similarly, the portion of Count IX based upon Reimer's allegations that the Club mishandled the Van Calcar Arbitration settlement is likewise unrelated to the Club's disciplinary actions against Reimer.  In the Complaint, Reimer alleges that Van Calcar was terminated from the Club based upon Defendant Aiona's complaints concerning her, and that the Club acted negligently in not providing equity members of the Club with the details of the confidential settlement agreement between Van Calcar and the Club.  [Compl. at ¶¶ 23-26.].  Reimer claims that the Club's handling of the Van Calcar Arbitration settlement was

negligent.  This portion of Count IX does not arise from the disciplinary actions taken by the Club against Reimer, nor does it directly arise out of the disciplinary actions the Club took against Van Calcar; rather, based on the Complaint, it appears Reimer simply alleges that the Club was negligent in its failure to reveal the details of its settlement with Van Calcar.  As such, the Court FINDS that the portion of Count IX relating to the Van Calcar Arbitration does not fall within the "disciplinary matters" exception to the general dispute resolution provision in Article XXI of the club Bylaws.

As to the portion of Count IX alleging that the Club was negligent in its handling of the complaint against Reimer and Reimer's subsequent suspension, this portion of the Complaint clearly deals with disciplinary matters.  As discussed above, the reason for Reimer's suspension, and the use of suspension in response to Aiona's complaint against him, clearly fall within the definition of "disciplinary matter[s]" contemplated by the Bylaws.  As such, the Court FINDS that the portion of Count IX alleging negligence against the Club for "the disciplinary action taken against Reimer [and] its violation of the Club's Governing Documents" is a "disciplinary matter" for purposes of Article XXI of the Bylaws and, as such, is not subject to mandatory dispute resolution under that provision.

The Court thus DENIES Reimer's motion as to the portions of Count IX claiming negligence against Defendant Aiona and claiming negligence against the Club based upon its handling of the Van Calcar Arbitration. The Court GRANTS Reimer's motion as to the portion of Count IX claiming negligence against the Club for its handling of the disciplinary matter.

### **CONCLUSION**

On the basis of the foregoing, Reimer's Motion for Summary Judgment, filed on November 5, 2012, is HEREBY GRANTED IN PART AND DENIED IN PART. The Court GRANTS Reimer's Motion and finds the dispute resolution provision is not applicable to Counts I, II, III, and the portion of Count IX claiming negligence against the Club for its handling of Reimer's suspension. The Court DENIES Reimer's Motion and finds the dispute resolution provision is applicable to Counts IV, V, VI, VII, VIII, and the portions of Count IX claiming negligence against Defendant Aiona and against the Club in connection with its handling of the Van Calcar Arbitration settlement.

For the foregoing reasons, the Court severs Counts IV, V, VI, VII, VIII, and the portions of Count IX claiming negligence against Defendant Aiona and against the Club in connection with its handling of the Van Calcar Arbitration settlement, and directs the parties to submit these claims to mediation, and, if necessary, arbitration, as mandated by the

dispute resolution provision in the Club Bylaws.

   IT IS SO ORDERED.

   DATED AT HONOLULU, HAWAII, February 7, 2013.



        /S/ Leslie E. Kobayashi
        Leslie E. Kobayashi
        United States District Judge

**JEFFREY REIMER V. KUKI'O GOLF AND BEACH CLUB, INC., ET AL; CIVIL NO. 12-00408 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

dispute resolution provision in the Club Bylaws.

   IT IS SO ORDERED.

   DATED AT HONOLULU, HAWAII, February 7, 2013.



        /S/ Leslie E. Kobayashi
        Leslie E. Kobayashi
        United States District Judge

**JEFFREY REIMER V. KUKI'O GOLF AND BEACH CLUB, INC., ET AL; CIVIL NO. 12-00408 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**